| Aug. Term, | Hess *et al. vs.* Johnson. | 1869. |
|---|---|---|

3 645
51 402

# Wheeling.

*Absent, BERKSHIRE, J.

## JAMES T. HESS *et al. vs.* JACOB J. JOHNSON.

### August Term, 1869.

1. The act of February 27th, 1866,† in relation to suits being prosecuted for acts done in obedience to orders, or by authority of any civil or military officer of this State or the United States, in aid of the purposes and policy of said authorities, in retarding, checking or suppressing the late rebellion, is not unconstitutional.

2. In an action for seizing and taking away eight barrels of whisky, during the late rebellion, the seizure being made upon the alleged ground that the whisky was being conveyed into and along the military lines of the United States forces, one instruction, given at the instance of the plaintiff, was that the defendants could not justify the seizure under the orders of one C., who was claimed to be a United States officer, unless they showed that he had lawful authority to do as they had done.    Another instruction, given at the instance of the defendants, was that the latter were allowed to justify under the orders of any civil or military officer of this State, or the United States; or that the act was done in aid of the purposes and policy of the authorities, in retarding, checking and suppressing the late rebellion.    HELD:

    1. That the instructions were inconsistent and calculated to mislead the jury.

    2. The instructions given at the instance of the defendants, propounded the law correctly.

This case arose in Monongalia county.    The declaration was filed at November rules, 1864, for trespass, alleging

---

*He had been engaged as counsel below.

† "Be it enacted by the legislature of West Virginia:

"1. No suit or action shall be maintained in the courts of this State, against any person for any act done in the suppression of the late rebellion; and it shall be a sufficient defense to such suit or action to show that such act

that in the year 1864, in that county, the defendants did seize and take away from the plaintiff eight barrels of whisky, of the value of 1,000 dollars. Jacob J. Johnson was the plaintiff, and James T. Hess, John W. Hess and Lewis W. Runner were the defendants. The trial was had at the May term, 1868, in the circuit court, when the jury found a verdict for the plaintiff, and assessed his damages at 500 dollars. A motion was made to set the verdict aside and grant a new trial upon the ground that the verdict was contrary to the evidence, but the court overruled the motion and gave judgment. The nature of the defense was that the defendants acted in obedience to the orders of one T. G. W. Craft, an officer, both civil and military, of the United States, in endeavoring to prevent whisky from being taken into or along the lines of the military occupation of the United States forces.

After the defendants had asked, and the court given the following instruction: "If the jury believe, from the evidence, that the seizure and detention of the whisky in controversy by the defendants, was done in obedience to the orders or the authority of any civil or military officer of this State, or of the re-organized government of Virginia, or the government of the United States, or that said act was done in aid of the purposes and policy of said authorities in retarding, checking and suppressing the late rebellion, then they must find for the defendants;" the court at the instance of the plaintiff gave the following instruction: "The plaintiff asks the court to instruct the jury, that, if they believe from the evidence in the cause, that the said defendants did seize and take the 8 barrels of whisky, in the declaration mentioned, and that the same were the property of the said plaintiff; that then, before the defendants can justify such seizure, or taking, by virtue of any direction, written or verbal, from Theodore G. W. Craft, that they must show that said Craft,

was done in obedience to the orders, or by the authority of any civil or military officer of this State, of the reorganized government of Virginia, or the government of the United States; or that said act was done in aid of the purposes and policy of said authorities, in retarding, checking and suppressing the late rebellion."

himself, had lawful power and authority to act in the premises, as, and in the manner the said defendant acted; to the giving of which the defendants, by their counsel, objected, but the court overruled said objections; and gave said instructions, to which opinion and ruling of the court, the defendants, by their counsel, excepted."

The defendants brought the case here on a writ of supersedeas.

*A. F. Haymond* for the plaintiff in error.

*P. H. Keck* for the defendants in error.

BROWN, President. This is an action of trespass for taking goods during the war. The article taken was whisky, which was an article claimed to be prohibited from introduction into and along the military lines of the army, operating in the field in actual hostilities. And the defence is that it was taken by the defendants under orders or authority of an officer, civil and military, of the United States, of this State, or in aid of the purpose or policy of the said authorities in retarding, checking and suppressing the existing rebellion. Two instructions were given to the jury and exception taken, and a verdict found for the plaintiff. The instructions are inconsistent with each other, and the question is which propounds the law correctly, if both do not. The act of February 27th, 1866, passed at the close of hostilities, but before the status of civil war was terminated by the only competent authorities, is but another instance of a series of measures superinduced by the exigencies of the times and the necessities of the case. It was intended as a shield to those whose patriotic zeal in the country's cause may have involved them, though acting in good faith for the public good, in complications, by which the public may be supposed to have profited, at their peril. It is consonant with the principle of protection which every State owes to its loyal citizens as a correlative of their allegiance and support in the hour of adversity. And though its validity has not been di-

rectly questioned by the parties to this controversy, it yet becomes necessary to determine that question in deciding this case, because the court having given two instructions which are inconsistent with each other, the former of which is undoubtedly the law if the latter is not, but cannot be if the latter is.

In the case of *Drehman* vs. *Stifel*, 41 Mo., 185, an ordinance of the convention of Missouri of like character and import with the statute under consideration was held valid. In that case the court said, "that it is a bill of attainder, as contended, there can not be any rational pretence. There is nothing in it that relates to the proceedings of a criminal nature in the sense of a bill of attainder, nor does it confiscate private property, nor punish anybody. It is rather an act of indemnity, oblivion and pardon ; of *indemnity*, in so far as it makes military orders and authority a justification for acts done by virtue thereof; of oblivion and pardon, in so far as it prohibits criminal prosecutions for acts done by such authority. It is not necessarily inconsistent with anything contained in the bill of rights in the same constitution. So far as the ordinance operates retrospectively upon the plaintiff's case it may be said to deprive him of his right to recover, but it does not take away nor infringe any vested right of property. A right to recover damages in an action of forcible entry and detainer is not a vested right of property.

"Now it would seem to be reasonable that in order to make this statute applicable to a military officer acting under express orders from the highest military authorities in time of civil war, and under circumstances of great public peril, in the midst of treasonable insurrection, when speedy action and the utmost energy were required, the clearest proofs of the want of lawful authority, of arbitrary abuse of power, and a plain perversion of military orders to malicious purposes, or selfish, private ends, ought to be demanded. Even if this were a case in which the existence of pressing danger or urgent necessity were to be submitted to a jury as a matter of fact, where the officer produces un-

equivocal evidence, of both military authority and express orders, for what was done in justification of his acts, something like direct and positive evidence to the contrary, ought to be expected. It may be that the plaintiff was not aware of any urgent necessity. A sagacious commander is apt to see necessities that are not apparent to everybody."

A like act of oblivion was passed in England after the restoration of the monarchy; this act operates *pro tanto* like a treaty of peace. It is incident to the right of self-defence, which every State has in time of war, and looks only to the protection of those who acted in good faith in aid of the purposes and policy of the proper authorities in retarding, checking and suppressing the late rebellion. It is not therefore, repugnant to the constitution. According to one instruction given to the jury by the court, the defendants could not justify under the orders of Craft, who it was claimed was an officer, unless they showed that he had lawful authority to do as they had done. But according to the other instruction given by the court to the jury, the defendants were allowed to justify under orders of any civil or military officer of the State or United States; or that the act was done in aid of the purposes or policy of said authorities in retarding, checking and suppressing the late rebellion.

This was based on the act of February 27th, 1866, which was evidently intended to enlarge the ground of defence and relieve parties within its provisions from the stringent rule laid down in the first instructions above mentioned; this inconsistency and conflict between the instructions given, was calculated to mislead the jury.

In conformity with the course pursued in the case of *Beckwith* vs. *Mollohan,* 2 W. Va., 477, and *Thompson* vs. *Updegraff,* decided at the present term, it is deemed proper to express no opinion on the motion for a new trial, so far as it respects the ground on which it was made in the court below, viz: that the verdict is contrary to, and not warranted by, the evidence, since by the views above indicated,

the judgment must be reversed for the misdirection of the court, and the cause sent back to be retried by another jury.

I am of opinion, therefore, to reverse the judgment, and remand the cause for further proceedings to be had therein in conformity with the principles above mentioned.

Maxwell, J., concurred.

JUDGMENT REVERSED.